1998-NMCA-093

963 P.2d 548

**STATE of New Mexico, ex rel., Danny Ray SALAZAR, Petitioner–Appellee,**

v.

**Joe ROYBAL, Respondent–Appellant.**

No. 18564.

Court of Appeals of New Mexico.

May 11, 1998.

Certiorari Denied July 1, 1998.

Tom Udall, Attorney General, Sandra R. Aguilar, Special Assistant Attorney General, Child Support Enforcement Division, Santa Fe, for Petitioner–Appellee.

Patrick R. Brito, Santa Fe, for Respondent–Appellant.

## OPINION

WECHSLER, Judge.

{1} This appeal arising under the Uniform Parentage Act, NMSA 1978, §§ 40–11–1 to –23 (1986, as amended through 1997) (UPA), brings to this Court for the first time the question of whether the State of New Mexico Human Services Department (Department) may bring a paternity and child support action on behalf of an adult child when the child's family has not received aid to families with dependent children (AFDC) from the Department. This appeal additionally raises under the UPA issues that are controlled by this Court's recent opinion in *Tedford v. Gregory*, 1998–NMCA–067, 125 N.M. 206, 959 P.2d 540, and other equitable issues. We hold that the Department does not have standing and remand to the district court. We affirm on all other issues.

*Facts and Procedural History*

{2} Joe Roybal (Father) and Carol Salazar (Mother) had a brief relationship in 1975 which resulted in the birth of Danny Ray Salazar (Son) on May 11, 1976. Mother did not inform Father of her pregnancy or of Son's existence until 1994. On April 11, 1996, when Son was nearly twenty years old, the Department filed a petition on behalf of Son to determine parentage and obtain child support. Mother did not join in the petition and declined to seek child support for her son. Father admitted parentage. After an evidentiary hearing, the child support hearing officer recommended that judgment in the amount of $23,760 be entered against Father for child support arrearages payable at the rate of $309 per month. The district court affirmed the report and decision, except that it required Father to pay the judgment at the rate of $165 per month. Father appeals the district court's order.

*Authority Under the UPA for Child Support Award*

{3} While this case was pending on appeal, this Court issued its opinion in *Tedford*. In *Tedford*, the mother was married to another man at the time of the daughter's birth. See *id.* ¶ 6. The mother concealed the existence of the daughter from the father and did not inform the daughter of her natural father until the daughter was sixteen years old. See *id.* ¶ 22. The daughter instituted a proceeding under the UPA against her father when she was twenty years old. See *id.* ¶ 8. The district court determined paternity and awarded the daughter retroactive child support from the date of her birth. See *id.* ¶ 10. As in this case, the father in *Tedford* challenged the authority of the district court to award retroactive child support under the UPA. This Court affirmed the district court's action because the daughter was an "interested party" who could bring suit under the UPA on the basis that: (1) the daughter, at age twenty, brought the action within three years of the date she reached the age of majority in conformance with Section 40–11–23(A) of the UPA; (2) under the UPA, an action to determine paternity may be combined with an action for support; and (3) the UPA's twenty-one-year statute of limitations applies to both claims for paternity and for past child support. See *id.* ¶ 13; *see also Padilla v. Montano*, 116 N.M. 398, 401–02, 862 P.2d 1257, 1260–61 (Ct.App.1993).

{4} Similarly, in this case, the district court did not act outside of its power. Son was also age twenty, within the limitations period of Section 40–11–23(A). By virtue of the statutory language of Sections 40–11–7(A) and –8(A), he is an "interested party" with the ability to bring this action under the UPA to both determine paternity and obtain past child support. See *Tedford*, 1998–NMCA–067, ¶ 13, 125 N.M. 206, 959 P.2d 540.

*Father's Equitable Arguments*

{5} Father argues that the district court should not have ordered child support because Mother interfered with Father's right to the custody and companionship of Son by concealing from Father infor-

mation about Son's existence. We review the failure of the district court to apply equitable defenses for abuse of discretion. *See Nearburg v. Yates Petroleum Corp.*, 1997–NMCA–069, ¶¶ 9, 32, 123 N.M. 526, 943 P.2d 560.

{6} Father supports his equitable argument by citing *Williams v. Williams*, 109 N.M. 92, 781 P.2d 1170 (Ct.App.1989), and *Damico v. Damico*, 7 Cal.4th 673, 29 Cal. Rptr.2d 787, 872 P.2d 126 (1994) (en banc), where the courts have denied the support rights of custodial parents who did not disclose information concerning a child to the other parent. The appellate courts in both of these cases affirmed the lower courts' rulings denying payments of child support arrearages in actions brought by custodial parents who, in extreme circumstances, concealed the child's whereabouts. *See Williams*, 109 N.M. at 97–98, 781 P.2d at 1175–76; *Damico*, 29 Cal.Rptr.2d 787, 872 P.2d at 133. Those courts did not condone the custodial parents' actions, and here, neither do we. However, Mother will not benefit and has not asked for relief in this case. As distinguished from *Williams* and *Damico*, this case has been brought on behalf of Son, and, as we will later discuss, Son is the real party in interest.

{7} Child support is for the child's benefit. *See Barela v. Barela*, 91 N.M. 686, 688, 579 P.2d 1253, 1255 (1978); *Fullen v. Fullen*, 21 N.M. 212, 237–38, 153 P. 294, 302 (1915). In the case on appeal, the district court did not abuse its discretion by failing to remove a benefit from Son because of Mother's selfish actions.

■■■ {8} Father also asserts that the district court's order is contrary to public policy in that it is an award of support for post-minority college education and because it encourages parents to conceal a child's existence or whereabouts from the other parent. We cannot agree with Father that the district court's order is improper for the following reasons. First, although the district court mentioned the possibility that Son may use the awarded support for his education, the purpose of the award, as sanctioned by the UPA, is Son's retroactive support which was Father's accrued obligation. *See Tedford*, 1998–NMCA–067, ¶ 24, 125

N.M. 206, 959 P.2d 540; *Padilla*, 116 N.M. at 401, 862 P.2d at 1260. Additionally, even though Son had been provided for in Father's absence, the fact that Son received support from Mother and her family, does not preclude Father's child support obligation. *Cf. Tedford*, 1998–NMCA–067, ¶¶ 13, 24, 125 N.M. 206, 959 P.2d 540. Second, as we have earlier stated, we do not condone Mother's actions. Nor do we wish to minimize the impact on Father of being deprived of parenting Son. However, the overriding policy consideration behind the UPA is ensuring support for children based on the parental responsibility that goes with sexual activity. Based on *Tedford*, Son is an interested party under the UPA. His interests are not judged by what may have been his mother's wrongful conduct.

*Standing*

■■■ {9} The Department's Child Support Enforcement Division filed the petition on behalf of Son. Section 27–2–27 establishes the Department as the state agency responsible for enforcing child and spousal support obligations under federal law and grants the Department the power to bring legal action in certain circumstances. *See* NMSA 1978, § 27–2–27 (1995). The Department argues that in this case it derives its authority from Section 27–2–27(D) under which it has the duty to "provide services to non-aid families with dependent children in the establishment and enforcement of paternity and child support obligations, including locating the absent parent." Additionally, the Department asserts that it derives its authority when Section 27–2–27(D) is read together with Sections 40–11–7 and –23(A). We cannot agree that the Department has standing to bring this petition.

{10} Section 27–2–27 is part of the Public Assistance Act (Act). *See* NMSA 1978, § 27–2–1 (1973). The Act describes categories of public assistance provided by the Department in connection with the federal Social Security Act. *See* NMSA 1978, § 27–2–3 (1975). One such category of assistance is AFDC. *See* NMSA 1978, § 27–2–6 (1982). When Section 27–2–27(D) refers to "non-aid families with dependent children," it is distin-

guishing families which receive AFDC. If a family with a dependent child does not receive AFDC, the Department may provide its services under Section 27–2–27(D) under the theory that if the dependent child does not receive parental financial support, the Department may need to step in to provide AFDC assistance. If the family does not have a dependent child, the family cannot qualify for AFDC and hence, does not fall within the service group permitted by Section 27–2–27(D). When the Department undertook service to Son in this case, Son was an adult, no longer a dependent child. Son acted on his own, independently of Mother. Son alone cannot comprise a family unit for purposes of Section 27–2–27(D).

{11} The standing provisions of the UPA, Sections 40–11–7(A) and –23(A), grant Son the ability to bring action as an interested party, *see Tedford*, 1998–NMCA–067, ¶ 13, 125 N.M. 206, 959 P.2d 540, but do not strengthen the Department's position. After Son reached the age of majority, his family lost its eligibility to receive public assistance. Even though he continues to be an interested party to bring an action under the UPA until he reaches twenty-one years of age, his actions no longer have bearing upon the Department. Section 27–2–27(D) does not contemplate that the Department provide legal services to persons when there is no risk that the State will be burdened if the Department does not act. The Department does not have standing to pursue this case.

■ {12} These proceedings are not necessarily improper. Despite the Department's lack of standing, Son could have filed his own suit, without assistance from the Department. The Department filed the petition on behalf of Son. It acted only as a nominal party; Son is the real party in interest.

■ {13} The real party in interest in a lawsuit is the " 'one [who] is the owner of the right being enforced and is in a position to discharge the defendant from the liability being asserted in the suit.' " *Edwards v. Mesch*, 107 N.M. 704, 706, 763 P.2d 1169, 1171 (1988) (quoting *Jesko v. Stauffer Chem. Co.*, 89 N.M. 786, 790, 558 P.2d 55, 59 (Ct. App.1976)). Son meets both criteria. As an

adult, Son both owns the right being enforced (child support for his benefit) and is in the position to discharge Father from liability. The Department, without the statutory authority of Section 27–2–27 that it may have had if Son were still a minor, is powerless to take action on Son's behalf.

{14} In actuality, the Department's role has been that of Son's attorney. The Department will assess Son "fees, costs, and charges" pursuant to Section 27–2–27(D). Son participated as the interested party under Section 40–11–7(A) in the district court proceedings. Looking at what occurred, the Department, as the nominal petitioner, was incorrectly before the court, and Son was represented by counsel which he selected but which was not authorized by statute. No substantive rights have been affected. Were we to instruct the district court to dismiss the proceedings, Son would not be barred from filing another petition. *See Cherpelis v. Cherpelis*, 1996–NMCA–037, ¶¶ 19–20, 121 N.M. 500, 914 P.2d 637. Our interest in judicial economy prevents our taking such action. *See State Bd. of Optometry v. Lee Optical Co.*, 287 Ala. 528, 253 So.2d 35, 36 (1971) (when state brings suit as a nominal party for the benefit of another, "the beneficiary is the real party in interest and must be considered the sole party of record"); *cf. Hall v. Teal*, 77 N.M. 780, 783, 427 P.2d 662, 664 (1967) (Supreme Court noting absurdity in argument that entire action must fail when only one of two plaintiffs is the real party in interest); *In re Forfeiture of $14,639 in U.S. Currency*, 120 N.M. 408, 411, 902 P.2d 563, 566 (Ct.App.1995) (construing motion as motion to dismiss because to "rule otherwise would defeat the goals of judicial economy since remanding for technically proper procedures would lead to the same result").

{15} With Son as the real party in interest, even though the Department may have improperly brought the lawsuit, Son may be substituted without adverse affect. *See* Rule 1–017(A) NMRA 1998 ("Where it appears that an action, by reason of honest mistake, is not prosecuted in the name of the real party in interest, the court may allow a reasonable time for ratification of commencement of the action by, or joinder or substitu-

tion of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."). We reverse and remand for the district court to decide whether it should substitute Son as petitioner instead of the State.

*Conclusion*

{16} For the foregoing reasons, we affirm the district court with respect to all issues except the Department's standing. We reverse on that issue and remand for further proceedings as discussed above.

{17} **IT IS SO ORDERED.**

APODACA and BUSTAMANTE, JJ., concur.