This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**NADIA URIAS,**

Petitioner-Appellant,

v.                                                              **No. A-1-CA-37091**

**KEITH NIETO,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Lee A. Kirksey, District Judge**

The Sawyers Law Group, LLC
Melissa A. Sawyers
Hobbs, NM

for Appellant

Sanders, Bruin, Coll & Worley, P.A.
Courtney A. Miller
Roswell, NM

for Appellee

### MEMORANDUM OPINION

**VANZI, Chief Judge.**

{1}     Petitioner Nadia Urias appeals the dismissal of her action for retroactive child support under the New Mexico Uniform Parentage Act (the UPA), NMSA

1978, §§ 40-11A-101 to -903 (2009). The district court found that Petitioner lacked standing because the child for whom she was seeking child support had reached the age of majority. We reverse.

**BACKGROUND**

{2}    In March 2017, Petitioner filed a petition to establish paternity and for child support from Respondent Keith Nieto for Jordi Nieto, who was born on September 11, 1998, and still attending high school. Respondent admitted that the child was his but denied that he owed child support to Petitioner. Thereafter, Respondent filed a motion to dismiss arguing that Petitioner waived the right to request "back pay" from him because the child had reached the age of majority, and therefore, any action for retroactive child support belonged to "the now adult child." After briefing and a hearing on the matter, the district court entered an order granting Respondent's motion to dismiss. The court's order set forth the current UPA standing provision, Section 40-11A-602, as well as the version repealed in 2009, NMSA 1978, § 40-11-7(A) (1986, repealed 2009). It then applied the reasoning from two New Mexico Court of Appeals cases, *Tedford v. Gregory*, 1998-NMCA-067, 125 N.M. 206, 959 P.2d 540, and *State ex rel. Salazar v. Roybal*, 1998-NMCA-093, 125 N.M. 471, 963 P.2d 548—both decided under the repealed standing provision—to conclude that only the child in this case "owns the right being enforced." In other words, since the child was now eighteen and able to sue

2

in his own name, he alone was the proper party to bring a parentage action. Consequently, the district court dismissed the action as not being brought by the real party in interest. This appeal followed.

**DISCUSSION**

{3}	The UPA governs determinations of parentage in New Mexico. Section 40-11A-103(A). Under the UPA, an action to determine paternity may be combined with an action for support. Section 40-11A-610(A). However, proceedings to adjudicate parentage and child support must be commenced "not later than three years after the child has reached the age of majority." Section 40-11A-607(A). New Mexico defines the age of majority as being eighteen years of age. NMSA 1978, § 28-6-1(A) (1973). The UPA specifies that, subject to certain limitations not relevant to this case, the following individuals or entities have standing to maintain a proceeding:

A.	the child;

B.	the mother of the child;

C.	a man whose paternity of the child is to be adjudicated;

D.	the support-enforcement agency;

E.	an authorized adoption agency or licensed child-placing agency; or

F.	a representative authorized by law to act for a person who would otherwise be entitled to maintain a proceeding but who is deceased, incapacitated or a minor.

3

Section 40-11A-602. "[C]hild" is defined as "a person of any age whose parentage may be determined pursuant to the [UPA]." Section 40-11A-102(F). The sole issue before this Court is whether Petitioner has standing to bring a child support action under the UPA when her child has reached the age of majority. For reasons discussed below, we hold that she can.

{4}     Whether a party has standing to sue under a statute is a question of law that we review de novo. *Estate of Swift ex rel. Swift v. Bullington*, 2013-NMCA-090, ¶ 8, 309 P.3d 102. "Where the Legislature has granted specific persons a cause of action by statute, the statute governs who has standing to sue." *San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 8, 150 N.M. 64, 257 P.3d 884. Our primary goal in construing a statute is to give effect to the intent of the Legislature. *State ex rel. Klineline v. Blackhurst*, 1988-NMSC-015, ¶ 12, 106 N.M. 732, 749 P.2d 1111. "To determine legislative intent we look first to the plain language of the statute." *Draper v. Mountain States Mut. Cas. Co.*, 1994-NMSC-002, ¶ 4, 116 N.M. 775, 867 P.2d 1157. "When a statute contains language that is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Disabled Am. Veterans v. Lakeside Veterans Club, Inc.*, 2011-NMCA-099, ¶ 13, 150 N.M. 569, 263 P.3d 911 (alterations omitted) (quoting *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73). "In determining whether a [party] has standing to bring a parentage

action under the UPA, 'the entire statute is to be read as a whole so that each provision may be considered in its relation to every other part.' " *Swift*, 2013-NMCA-090, ¶ 8 (alteration omitted) (quoting *San Juan Agric. Water Users Ass'n*, 2011-NMSC-011, ¶ 9).

{5} We begin, as we must, with the plain language of the statute. As noted above, Section 40-11A-602 lists several classes of individuals and entities who have standing to maintain a parentage action, *including* "the mother of the child." *See also* Unif. Parentage Act § 602 cmt. (2000, amended 2002) ("This section grants standing to a broad range of individuals and agencies to bring a parentage proceeding."). Given the clear and unequivocal language of Section 40-11A-602, we see no basis for the district court's determination that the child's mother, Petitioner here, did not have standing in this case. We note that the only other limitation to maintaining suit under the UPA is Section 40-11A-607(A)'s requirement that "[a]ny proceeding to adjudicate child support shall be brought not later than three years after the child has reached the age of majority." There is no issue concerning this provision since the petition was filed after the child reached eighteen but well before the three-year limitation period. Simply put, nothing in the UPA dictates that the child is the only party who can bring a child support action once he or she reaches the age of majority.

**{6}**   To the extent the district court concluded that the list of those who have statutory standing must be taken in descending order of priority as set forth in Section 40-11A-602, we disagree. There is nothing in the UPA or in our case law that indicates that this list is in order of preference. If the Legislature wanted to create a hierarchy of parties able to bring actions to determine parentage, it could have done so. *Cf., e.g.*, NMSA 1978, § 41-2-3 (2001) (providing a hierarchy of persons able to bring wrongful death action). And if it wanted to limit the standing to the adult child, it similarly could have so provided. *Cf. Paz v. Tijerina*, 2007-NMCA-109, ¶ 15, 142 N.M. 391, 165 P.3d 1167 ("We refuse to second guess the Legislature on this issue because if the Legislature wanted employees to be reimbursed for having to compel a defense under the [New Mexico Tort Claims Act], it could have so provided in the Act.").

**{7}**   Respondent concedes more than once in his answer brief that "the blackletter law is clear" that Petitioner has standing to bring this suit for parentage and support. Yet he argues—as he did below—that "it is the underlying purpose" of the UPA that "allows the [district c]ourt to preclude [Petitioner] from bringing the parentage action." Respondent's rationale appears to be that the purpose of the UPA and child support laws is to benefit the child and, therefore, the child is the real party in interest and the rightful owner of the cause of action. We are not persuaded.

**{8}** As an initial matter, Respondent provides no authority for his argument. Moreover, his calls for us to look beyond the plain language of the statute are questionable in this case where the language is clear and the results logical. Statutory interpretation requires that we look to the statute as it is written and "attempt to apply 'the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and *refrain from further statutory interpretation*.' " *Wood v. State of N.M. Educ. Ret. Bd.*, 2011-NMCA-020, ¶ 12, 149 N.M. 455, 250 P.3d 881 (emphasis added) (quoting *Truong*, 2010-NMSC-009, ¶ 37). The appellate courts "will not read into a statute language which is not there, particularly if it makes sense as written." *State ex rel. Duran v. Anaya*, 1985-NMSC-044, ¶ 10, 102 N.M. 609, 698 P.2d 882.

**{9}** By Respondent's own admission, Section 40-11A-602 is unambiguous and allows Petitioner to bring a petition for child support despite the child's age. And it is entirely logical for a child's parent to seek reimbursement for past child support even if the child has turned eighteen. *See Brannock v. Brannock*, 1986-NMSC-042, ¶ 5, 104 N.M. 385, 722 P.2d 636 (recognizing that a parent who provides support for a child may file a claim for past due child support because the right to seek such payments belongs to the person who supported the child). This logic is further borne out in this case where Petitioner provided support to the child, despite the child being eighteen, because the child was still in high school. *See* NMSA 1978, §

7

40-4-7(B)(3)(b) (1997) ("[The court] may set apart out of the property or income of the respective parties such portion for the maintenance and education of . . . their children *until the children's graduation from high school if the children are emancipated only by age, are under nineteen and are attending high school*[.]" (emphasis added)).

{10}   Respondent's reliance on *Tedford* and *Salazar* is unavailing. Both of these cases analyzed standing under the former (and now repealed) version of the UPA. *See Tedford*, 1998-NMCA-067, ¶ 13; *Salazar*, 1998-NMCA-093, ¶ 4. At that time, the UPA standing provision stated, "Any *interested party* may bring an action for the purpose of determining the existence or nonexistence of the parent and child relationship." Section 40-11-7(A) (emphasis added). This broadly worded provision was repealed and replaced in its entirety in 2009. *See* §§ 40-11A-101 to -903. In particular, the "interested party" language was deleted, and the newly enacted Section 40-11A-602 instead sets forth a specific list of individuals and entities who have standing to maintain suit in a parentage and child support action. Notwithstanding the wholly different statutory construction, we note as well that *Tedford* never said that the adult child was the *only* person to bring a parentage action, but simply that he *could* bring the action. *See Tedford*, 1998-NMCA-067, ¶ 13 ("[The petitioner] brought this action when she was twenty years old, and within two years after she reached the age of majority. . . . Therefore, her action

8

was timely filed under the UPA, and [the petitioner], in her status as an adult, is clearly *an* "interested party" entitled to initiate proceedings under the UPA." (emphasis added) (citations omitted)).

{11} Nor are we persuaded by the cases from other jurisdictions cited by Respondent. Respondent contends that *In re Paternity of McGuire-Byers*, 892 N.E.2d 187 (Ind. Ct. App. 2008), and *In re Estate of Antkowiak*, 642 N.E.2d 1154 (Ohio Ct. App. 1994), "allow [New Mexico c]ourts to conclude that the adult-child is now the most appropriate, and thus proper, party to have standing to bring an action for paternity and support." We disagree. The Indiana and Ohio appellate courts were interpreting their own codes and neither state had enacted the version of the UPA that New Mexico enacted in 2009. *See* Nat'l Conference of Comm'rs on Unif. State Laws, *Legislative Fact Sheet - Parentage Act (2002)*, http://uniformlaws.org/LegislativeFactSheet.aspx?title=Parentage%20Act%20(200 2) (last visited Oct. 17, 2018) (indicating that neither Indiana nor Ohio have adopted the 2002 version of the UPA). Consequently, these cases are distinguishable and are not relevant to our analysis. *Cf. Swift*, 2013-NMCA-090, ¶ 14 ("Several of the cases [relied on by the respondent] are from jurisdictions that have not adopted the UPA and are thus distinguishable due to the lack of specific statutory authority as to whether a paternity action survives the death of the putative father.").

**{12}** We hold that the plain language of Section 40-11A-602 grants standing to Petitioner to bring a parentage and child support action and that Petitioner timely filed her petition under Section 40-11A-607(A).

**CONCLUSION**

**{13}** For the foregoing reasons, we reverse the district court and remand for further proceedings consistent with this opinion.

**{14}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____
**HENRY M. BOHNHOFF, Judge**

_____
**JENNIFER L. ATTREP, Judge**